No. 12,383.

HEIRS OF AMERON LEDOUX VS. LEON LAVEDAN ET ALS.; HEIRS OF AMERON LEDOUX VS. LAURA R. HYAMS, ADMINISTRATRIX, ET ALS.; GEORGE W. LEWIS, INTERVENOR (CONSOLIDATED).

The plaintiff brought the action to compel delivery of property to the succession of which he was a creditor, in this action another creditor joined as an intervenor.

1. *Defence as to Intervenor*—The plea of *res judicata* was pleaded in bar to the action.

2. *Jurisdiction*—The intervenor contended, in opposition to that plea, that the probate court was without jurisdiction to compel the administrator to deliver property, of which, he claimed, he was personally the owner.

3. *Bound by the Proceedings (Intervenor)*—She was plaintiff in the action in which the judgment, claimed as *res judicata*, was rendered. It was intervenor's action which brought title to real estate into question.

*Ex Necessitate Rei*—The court had jurisdiction. Succession of Bellande, 41 An. 493.

4. *Title of Administrator*—The intervenor was concluded by the judgment, which decreed contradictorily with her that the succession, whose right she championed as a creditor, had no title.

58

5. *Not a Bar to Plaintiffs (Res Judicata)*—The plea of *res judicata* does not apply, as against the claim made by the plaintiffs, for the reason the administrator did not represent the succession.

6. *Not a Judicial Mandatory*—(a) The administrator had an adverse interest, and was not, in consequence, the judicial mandatory of the creditors in the suit in which he obtained a judgment decreeing that he was the owner. His heirs and those holding under them have no right to the property on the plea of *res judicata*.

7. *Creditor's Interest*—(b) The creditor, by whom suit was brought against the administrator personally, represented her own interest, and not the other creditors of the succession. The judgment rendered against her, on her opposition remaining (after the provisional account had been homologated in so far as not opposed), is not *res judicata* as against the other creditors of the succession, who did not join in the opposition to compel the administrator to deliver property.

8. *Proceedings not in Concurso*—(c) The fact that the creditors were carried, as to their claim, on the provisional account did not render them subject to the plea of *res judicata* in the matter of a judgment procured by one of the creditors against the administrator personally; the creditors against whom the plea is pleaded were not present; were not notified and took no part in the proceeding, which resulted in a judgment pleaded as *res judicata*.

ON ‘APPLICATION FOR REHEARING.

The issue was decided in favor of plaintiffs, appellants; appellees are bound for costs of plaintiff's appeal.

The court when passing upon the question of *res judicata* is necessarily restricted to the issue which has been determined by the judgment pleaded as *res judicata*

APPEAL from the Civil District Court for the Parish of Orleans. *Théard, J.*

*Frank L. Richardson* and *Frank Soulé* for Plaintiffs, Appellants.

*Jerome Meunier* for J. P. Dupont, Defendant, Appellee.

*Benjamin Ory* for Leon Lavedan, Defendant, Appellee.

*Fergus Kernan* for Laura R. Hyams, Administratrix, Defendant and Appellant.

*T. O. Stark* for Dr. Geo. W. Lewis, Intervenor, Appellant.

Argued and submitted March 17, 1897.
Opinion handed down April 26, 1897.
Decree modified and rehearing refused May 31, 1897.

The opinion of the court was delivered by

BREAUX, J. The plaintiffs are the heirs of the late Ameron Ledoux, who was a creditor of the succession of the late Henry M. Hyams, evidenced by a judgment rendered in 1866 and kept alive at all times since, it is alleged.

They brought this action against the defendants for a judgment decreeing that the property described in their petition is owned by the successions of the late Henry M. Hyams and wife, who died insolvent, it is averred. Plaintiffs in their petition claim that it should be sold as succession property and that the proceeds should be applied to the payment of creditors upon an account to be filed.

The petitioners alleged that the lifetime interest in the property had been confiscated by the United States Government and sold.

Subsequently, the late H. M. Hyams was pardoned by the proclamation of General Amnesty, issued by the President of the United States, and restored to his rights.

He and his wife died in 1875.

In 1877, in due course of administration of their successions, the administrator filed a provisional account of his administration.

Among the names of creditors carried upon the account were those of the father of plaintiff, Ameron Ledoux, of Mrs. Camille Lewis, and of the Planter's Bank.

The former Ameron Ledoux did not oppose the account. Oppositions were filed by Mrs. Camille Lewis and by the Planter's Bank.

They alleged that there appeared to have been sold by H. M. Hyams, deceased, to I. S. Hyams, his son, property described in the petition. They charged that the sale was simulated.

They also alleged that there were other properties which I. S. Hyams ostensibly purchased for himself, but which really belonged to the succession; because they were made in the vendee's name for the use and benefit of H. M. Hyams, who furnished the funds, and because the vendors in these sales (vendors to I. S. Hyams) had themselves only purchased the life interest or usufruct of the property at the confiscation sales made by the United States Marshal; that the vendors to I. S. Hyams only sold the right which they had purchased (viz.: the life interest), and that although the late H. M. Hyams intervened and became a party to the sales, he could not thereby satisfy or confirm these sales to I. S. Hyams, so as to convey to the latter an absolute and enduring ownership in the property.

That by the death of H. M. Hyams the life interest or usufruct in the property had become extinguished and the ownership reverted to his succession, subject to the rights of its creditors.

The moneyed demand of this opponent, Mrs. Camille Lewis, was merged into a judgment in her favor, in 1866.

The account was homologated in 1877, so far as not opposed. In 1878, judgment was rendered on the opposition, sustaining them, for the property covered by the simulated act of sale (or rather sales the judge of the lower court decided were simulated) and he dismissed the oppositions, as to the remainder.

In his reasons for judgment the judge of the Second District Court, a court of probates, at the time held that by the condemnation and sale of the property, all interest of the late Henry M. Hyams " was " divested, and that the purchase by I. S. Hyams from the pur- " chasers at the confiscation sale did not vest the fee simple in I. S. " Hyams; that the vendors to Hyams (adjudicatees of the govern- " ment) could not give title transferring the property in ownership, " but that at the death of H. M. Hyams his children took these " properties which were once his by virtue of the statute and " express reservation in the Federal Constitution, and that they " could not be brought into his succession, through whom they did " not descend to his heirs; that the property may be burdened with " the debts of Hyams, Sr., contracted before their confiscation and " sale, a question he (the judge a quo) stated he was not called upon " to determine. If they are," added the court, " this is not the " forum in which opponents can exercise the rights which they have. " They must go before courts of ordinary jurisdiction."

Plaintiffs in the case before us, for our determination, in their petition, allege that the properties which they claim should be sold to pay creditors of the succession were sold under the confiscation act as the property of H. M. Hyams, and that under the amnesty proclamation they reverted to him, and by his death to his succession, and not to the heirs directly, as erroneously decided by the judgment rendered in 1878.

George W. Lewis, transferee of Mrs. Camille Lewis, intervened and reiterated the allegations of plaintiffs.

The defendants filed the plea of res judicata; the judgment upon this plea was for the defendants Lavedan et al.

The plaintiffs and the intervenor prosecute this appeal.

There is disagreement among counsel as to what property is involved in this litigation. No deed containing description of property has been introduced in evidence, and no attempt at identification of property by evidence was made.

All the property designated as property of the first class is not clearly identified.

The same is true of the property designated as property of the second class—*i. e.*, the property which had been confiscated does not appear to have been segregated from the property which was not confiscated. The difference as to the two, as to title, was a subject of argument at bar.

We have seen that the judgment rendered in 1878 decreed the first—the property of the first class—property of the succession and dismissed the opposition as to the property of the second class.

With the evidence before us and in view of the allegation made in the pleadings, we can not determine with any degree of accuracy what property is included in the first class and what property is in the second class. We will, notwithstanding, pass upon the issue of law involved.

### SHE TRIED THE RIGHT WITH THE ADMINISTRATOR AND LOST.

The transferror of the intervenor provoked the judgment which (he) the intervenor now contends was rendered by a court without jurisdiction. In the first case as in the second, the purpose of the suit was to compel the administrator to include the confiscated property among the assets of the successions of H. M. Hyams and wife.

She (Mrs. Camille Lewis) partially succeeded; the court ordered the ostensible owner, I. M. Hyams, to deliver to the succession property held; it was decreed, under a simulated title. In matter of the dismissed opposition, no appeal was taken. She (plaintiff in the first suit) acquiesced in the judgment. We think, after having given careful attention to the grounds urged in the suit before us, that the Probate Court had jurisdiction to pass upon an issue raised by this opponent in the first case, pleaded here as *res judicata*. It was her action which brought the title to real estate in question. The Court of Probate was competent to decide a question of title to real estate when title to real estate was an issue directly made.

Mrs. Camille Lewis had authority to stand in judgment. She is concluded by the judgment rendered at her instance. It were

unreasonable to hold that one as creditor may sue to compel an heir to deliver property to a succession, but that the heir is not bound by the result in case of failure in maintaining the action; that she may bring another action to compel the same heir to surrender the property to which in the former case the court. determined the succession had no right as owner. It is too late in our opinion for the intervenor to raise questions at variance with a decree procured by the intervenor's author many years ago. The thing demanded was unquestionably the same, and it was founded on the same cause of action; this constitutes the thing adjudged.

The issues involved were considered and determined, and the judgment was definitive against the intervenor as to a portion of the property. Granger vs. Singleton, 32 An. 900.

The successions were insolvent. The purpose was to determine the amount to which each creditor was entitled from the sales of the property.

It is true the proceedings were probate in character. But the Court of Probates was competent to decide questions of title where real estate was brought in question. Act of 1843, No. 71.

The intervenor pleaded title in the succession to the whole property. Her plea having been sustained in part, she is concluded as to the remainder, to which it was held the succession had no right in course of the settlement of these successions.

In Morton vs. Packwood, 3 An. 167, this court held that an executor could maintain his personal right to property for which the heirs sought to compel him to account, and that the judgment recognizing him as owner constituted *res judicata*; his personal rights were asserted and determined upon. It was adjudged by the Court of Probates that he was the owner. "No question," said the court, "having been made as to the jurisdiction of the court, we think there is no difference in principle between a litigation in this form and a judgment for a sum of money, and the title to, or interest in, real property, where the parties select this mode of determining it."

It has also been decided by this court that it matters "not under what form the question is presented, whenever the same question recurs between the same parties, *res judicata* operates as a bar.

Judge Porter, of a similar issue, speaking for the court, said:

" A judgment between two creditors on such opposition would not perhaps form *res judicata* except as between them." Saul vs. His·

Creditors, 7 N. S. 433.   An authority, which applies here both to the intervenor and to the plaintiffs, to that latter it applies, and supports the view that they are not concluded by the judgment.

The intervenor in the second place contends that the dismissal of the opposition, as dismissed in the judgment pleaded as *res judicata*, reserved to Mrs. Lewis from whom he holds the rights of resorting to another jurisdiction.   The defence as to that plea is based upon the " reasons for judgment," and not upon the decree, which is absolute, and contains no reservation.

But granted, that these " reasons " should be considered in passing upon the question of *res judicata*.

It nowhere appears that a reservation was made against the successions; as to these it was expressly decided that the properties were not part of their assets.   Whatever was reserved, as we read the reasons for judgment, related to those persons (and the heirs who received title from them), who, possibly, the court held, had become purchasers of the property, *cum onere*.

## THE JUDGMENT PLEADED AS RES JUDICATA MADE NO RESERVATION AS TO THE SUCCESSION OF H. M. HYAMS.

In conclusion, as to the intervenor: we do not understand as contended by her counsel, that the judge declared that he was incompetent to entertain the demand, or that he decided upon a point which he disclaimed the competency to decide.   As against the successions upon the issues presented, he decided, in matter of their settlement, that they were not entitled to the property.   As against third persons, if the creditors had claims he determined that the proceeding should be against them in a court of another jurisdiction and not against a succession in a court of probate jurisdiction.

### CASE OF PLAINTIFF.

The plaintiffs, in the first place, urged that they were not concluded by the plea of *res judicata* for the reason that, different from the position of the intervenor, their ancestor from whom they inherited was not a party to the opposition.

We have divided the question at issue as follows, viz.:

1. Whether the administrator represented the creditors in the suit which resulted in his favor.

2. Whether the creditor, Mrs. Lewis, by whom the suit was brought

against the administrator, represented her interest only, or that of all the creditors of the succession.

3. Whether the creditors were estopped by the proceedings, between the suing creditor and the administrator; by the fact that they were parties to the provisional account which had been homologated, so far as not opposed, at the date that the judgment was rendered upon the opposition of Mrs. Camille Lewis *et al.*

### THE ADMINISTRATOR WAS NOT THE REPRESENTATIVE OF THE CREDITORS.

Taking up the first proposition, we think that it would be going out of fixed limits to hold that the administrator represented the heirs and creditors in an action to compel him to deliver property to which he claims title. The administrator in such an action, which involved his personal interest, represented himself only.

The succession has no legal defender in so far as he is concerned. He can not be both plaintiff and defendant in a suit. An administrator, in that case, must plead for his account, and not for account of the heirs and creditors.

We must keep in view that to sustain the plea of *res judicata* there must be absence of doubt and the presence of certainty.

How can the proof of *res judicata* be clear, certain and convincing, as required, where the administrator is the defendant, claiming the property in controversy as his?

After having personally succeeded in his demand against a creditor, who chose to sue him, he or his heirs can not sustain the position that he was the legal representative of all the other creditors; against whose interest he sustained his defence against the suing creditor.

One can not be a plaintiff and defendant in matter of a succession of which he is the administrator. Harris vs. Pickett, 37 An. 746; Thomas vs. Bienvenue, 35 An. 937.

If the administrator were living and offering to defend his title on the ground of *res judicata*, he could not properly be heard.

The position of owner and agent would be incompatible. The administrator instead of representing the creditors is their adversary. He is openly opposed to them.

In so far as relates to that plea his heirs and those who hold under them are not in a better position.

*A judgment rendered between the creditor and the administrator, the latter an interested party, is not res judicata against other creditors.*

This brings us to the question of the extent that one creditor binds the others, in an action by him against the administrator to compel him to deliver to the succession property of which he claims he is the owner.

Of course a creditor of an insolvent succession whose claim is unquestioned can compel the administrator to deliver property of the succession he withholds. Neda vs. Fontenot, 2 An. 782; Macarty vs. Bond *et al.*, 9 La. 355.

The right of the creditor to the remedy just stated is not denied in this case. We refer to his remedy in order to state more clearly our views as to the effect, *vel non*, its exercise has upon the rights of other creditors. The creditor, we are of opinion, can not represent the succession further than it is actually necessary for him, in his own interest, to represent it, in order to maintain his own action. He can not, by separate or combined action with other creditors, fix responsibilities or offset the rights of creditors who, after the administrator's account, in so far as not opposed, is homologated, choose to remain silent and accept the account as homologated.

The creditor pleaded for his account and not as a judicial agent for the benefit of all the creditors. He can not as relates to other creditors engraft upon an administrator's provisional account a separate litigation against the administrator in his individual capacity and obtain a judgment which will operate as a bar to the claims of other creditors.

The heirs, like the creditor, can sue to have property delivered to the succession, from which he inherits. His remedy being similar the effect as relates to *res judicata vel non* must be the same.

Regarding heirs, in our researches upon the subject, we have found in Moreau and Carleton's translation of the Partidas, Vol. 1, page 287, a principle of law clearly expressed: if one of the heirs of a debtor be sued and the plaintiff establish his claim by proving his debt to be due from the deceased, and thereupon judgment be rendered against the heir, such judgment shall not prejudice the other heirs, though given with their knowledge, and without any opposition upon their part; the same is the case where one of the heirs of the creditor instituted a suit for a debt due the deceased, with the knowledge of the other heirs, and without their making any opposi-

tion to it, for though the plaintiff be cast, the judgment against him shall not prejudice the other heirs.

We think the foregoing rule is correct; it follows that the judgment between the creditor and the administrator personally was *res judicata*, but as to the other creditors it was *res inter alios judicata*. We conclude upon this point with the statement: creditors are not represented by a creditor who has brought an action to compel an administrator personally to deliver property to the succession, of which the administrator claims title as owner.

### ISSUE NOT DECIDED IN CONCURSO.

We are brought to the last ground upon this branch of the case.

Were all the parties plaintiff and defendant in the matter of the questions presented and decided contradictorily between the opponents in the account filed in 1878, and the administrator personally?

Unquestionably the rule applies where there is opposition to an account and the tableau proposes a distribution of funds on hand. There arises as to the funds to be distributed in that case a *concurso* among the creditors.

The possibility *vel non* under our jurisprudence of extending that rule so as to apply it to the creditors where one of their number has brought suit against the administrator to compel him to deliver property as before stated, is the difficult question before us for determination.

At the date that the judgment pleaded as *res judicata* was rendered, the provisional account had been homologated, so far as not opposed, and the creditors who were not opponents had virtually accepted the account as correct. They did not join in the opposition.

The creditors who continued opponents after the judgment of homologation had been rendered primarily sought their own interest. They pursued their action, and not an action of all the creditors.

In their answer (for an opposition corresponds to the answer in the ordinary procedure) they combined the two; an action in character petitory, and an action in opposition to the account. May it not be if the creditor represents all the creditors, as contended by defendants, that it would frequently operate as a hardship in the settlement of insolvent successions, if the creditor could sue the administrator personally; combine with him and illegally impose an

onerous charge upon the estate.   It does appear to us that the creditor, neither by separate nor combined action, is authorized to fix responsibilities upon the other creditors in cases in which he is authorized to sue because of his personal interest.

We have here discussed the proposition entirely in the abstract.

The creditors who procured a decree to compel the administrator to deliver the property only sought a legal right.   The possible measure and abuse of the remedy, if defendant's theory were adopted, is referred to only by way of illustration.

We add further on this point: Creditors not suing are not parties; for parties are those who have the right to control the proceeding, nor are they bound as interested persons, for they were treated as third persons.   It is not shown that they were notified or that they were present at the trial, personally or by counsel, or that they had the least knowledge of the action.

The creditor suing for property for the succession acts in aid of the administrator who has possession for all the creditors.   Ordinarily a suit by a creditor lies to compel a defendant to deliver to the administrator property alleged to belong to the succession.   There must be a succession representative in such a case.   Neda vs. Fontenot, 2 An. 784.

Here there was none; the administrator, the court decided, was personally the owner.   He was an adverse party, and as such incapable of acquiring rights against those by whom he was not sued.

It was also urged by defendant's counsel in support of the plea of *res judicata* that the succession had received a portion of the property claimed by the creditor, who is the intervenor here.   That may be, but we have not found evidence of it of record.

It does not appear that the property was delivered to the succession; that it was sold and the proceeds distributed.

It is well settled; to constitute *res judicata* the issues decided must be clear, definite, certain; there must be absence of doubt. In this case there was absence of needful certainty, and we were therefore compelled to overrule the plea.

We limited our decree to the plea of *res judicata* proper.

The case of Vincent vs. Phillips, Tutrix, 48 An. 352, 356, was cited at bar, in which the court said: " Whether it be strictly and technically *res judicata* or not the prior case must be taken to have settled the law of the case."

Here, the case not being entirely similar, we decide " strictly and technically " that the plea was not sustained by the judgment pleaded. We leave all other questions open for future determination. Passing from the subject in hand we will state that the last cited case is unlike the case here in that in the former the creditor sued the legal representative of the succession who had possession for the creditors and no adverse interest. She was not claiming property, and was not decreed the owner of the property claimed by one of the creditors of the succession for the succession.

Lastly, as there are two sets of titles or classes, we think it should thereafter be determined by the reference to the effect of the pleadings and by reference to evidence, in which set or class each title is included.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed in so far as it decrees that the plea of *res judicata* be maintained as to George W. Lewis, the intervenor.

To this extent the judgment is affirmed.

It is ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed as to the plaintiff heirs of Ameron Ledoux; as to these the plea of *res judicata* is overruled.

And to this extent the judgment is annulled.

The case is remanded to be reinstated and the remaining issues tried.

### ON APPLICATION FOR A REHEARING.

The heirs of Ameron Ledoux, appellants, apply for the insertion of a statement in our decree as to who shall pay costs.

The one cast on appeal pays costs of appeal, is read in every judgment.

It follows, in this case, the appellant is not concerned in the matter of costs; they are due by appellees.

If the judgment is for appellants, on any issue, the appellees pay costs.

As to the costs in the District Court, it will be time enough to tax them when the final decree will be rendered in that court.

The plaintiffs and appellants have not applied for a rehearing.

This statement does not require a rehearing, as it is, in effect, included in our decree.

The intervenor has filed an application, not for a rehearing, but for a correction or modification of the judgment.

The judgment pleaded as *res judicata* divided the titles to property into two classes.

1. "Those which appear to have been sold by the late H. M. Hyams, deceased, to I. S. Hyams, his son and administrator.

2. "Those which I. S. Hyams purchased from parties who had purchased said properties, or more properly the life estate thereto of H. M. Hyams at the confiscation sales made by the United States Marshal, by virtue of the orders issued in the matter of the United States vs. H. M. Hyams, No. 7685 of the docket of the United States Court."

The property of the first class is referred to in the reasons for judgment, and in the judgment as property held under a simulated title and as still belonging to the succession.

While property of the second class is referred to as having been acquired under a confiscation sale.

In the nature of things the plea of *res judicata* could only apply to the latter.

This judgment appealed from, as to the intervenor, we have affirmed.

We have, in view of conflicting allegations in the pleadings and insufficiency of the evidence, declined to determine whether the properties involved belonged to the first or second class.

We have considered and still consider that all issues are open for examination and determination, as relates to intervenor, save that relating to property of the second class.

The issue, as we appreciated the judgment from which this appeal was taken, was *res judicata vel non* as to the second class.

In that case there is no need of correcting our decree.

But if there was anything decreed touching the first class as barred by the plea of *res judicata* (we have found nothing of the sort), it must be considered modified and restricted by our views as just expressed.

As to the property of the first class the issues are open for determination.

The application is granted in so far as it may be needful.

It is therefore ordered and adjudged that our former decree is corrected and modified in accordance with the views above expressed.

Rehearing refused.